CHRISTY EDWARD and GERALD
CHINNAPPAN,

      Plaintiffs,

v.

CIVIL ACTION NO.
1:11-CV-2465-RWS-LTW

BANK OF AMERICA, N.A. formerly
known as BAC HOME LOAN
SERVICING LP, BANK OF NEW
YORK MELLON (TRUSTEE FOR
CWABS INC., ASSET-BANAKED
CERTIFICATES SERIES 2007-8), and
JOHN DOE(S),

      Defendants.

### MAGISTRATE JUDGE'S NON-FINAL ORDER AND REPORT AND RECOMMENDATION

This case is presently before the Court on Defendants Bank of America, N.A. and the Bank of New York Mellon's Motion to Dismiss Plaintiffs' First Amended Complaint, Bank Defendants' Motion for Leave to File Sur-Reply, Plaintiffs' Joint Motion for Leave to Amend Complaint and Extension of Time to Amend Complaint, Defendants Bank of America, N.A. and the Bank of New York Mellon's Motion for Leave to File Sur-Reply. Docket Entries [18, 19, 32, 37].

For the reasons outlined below, the parties' motions are adjudicated as follows:

(1)    This Court **RECOMMENDS** that Bank of America, N.A. and the Bank of New York Mellon's Motion to Dismiss Plaintiffs' First Amended Complaint be

**GRANTED IN PART AND DENIED IN PART**.  Docket Entry [18].

(2)    Bank Defendants' Motion for Leave to File Sur-Reply is **DEEMED MOOT** because the Court has already adjudicated the Plaintiffs' Motion to Remand and Motion to Strike in Defendants' favor.  Docket Entry [19].

(3)    Plaintiffs' Joint Motion for Leave to Amend Complaint and Extension of Time to Amend Complaint is **DENIED**.  Docket Entry [32].

(4)     Defendants Bank of America, N.A. and the Bank of New York Mellon's Motion for Leave to File Sur-Reply is **GRANTED**.  Docket Entry [37].

## BANK OF AMERICA, N.A. AND THE BANK OF NEW YORK MELLON'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

## I.    BACKGROUND

Plaintiff Christy Edward ("Plaintiff Edward") filed the instant lawsuit in the Superior Court of DeKalb County on June 23, 2011, for claims arising out of BAC Home Loan Servicing, LP's ("BAC") scheduled sale of her residence at a foreclosure sale. (Am. Compl. ¶¶ 4, 69).   On August 24, 2011, Plaintiff Edward filed an Amended Complaint as a matter of right in which she added Gerald Chinnappan as a Plaintiff and added multiple causes of action.  In Plaintiffs' Amended Complaint, they contend that they obtained a mortgage loan from CTX Mortgage Company, LLC ("CTX") and executed a Security Deed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") for the financing of their residence.  (Am. Compl. ¶¶ 5-9).  In March 2007, CTX sold the Note to Countrywide Bank, N.A. ("Countrywide").  (Am. Compl. ¶¶ 5-9).

According to Plaintiffs, Countrywide "pledged, hypothecated sold and/or assigned" the loan to New York trust CWABS Asset-Backed Certificates Trust 2007-2008. (Am. Compl. ¶ 10). Plaintiffs allege without presenting facts in support that the transfer was done "without proper assignment or endorsement." (Am. Compl. ¶ 10). Plaintiffs further asserted that their loan Note "has been securitized and is in the pool of over 2000 Loans . . . under CWABS Asset-Backed Certificates Trust 2007-8" and the Bank of New York Melon was appointed as the trustee. (Am. Compl. ¶ 11). Plaintiffs state that around the same time period, Bank of America, N.A. ("BOA") sent them notice claiming to be the servicer for the Trustee and Plaintiffs began making their loan payments to BOA. (Am. Compl. ¶ 12). On May 14, 2010, the law firm of Shuping, Morse & Ross, LLP ("SMR"), filed an Assignment of the Security Deed on behalf of MERS, which was executed by Andrew Shuping, Jr. ("Shuping"), as Vice President of MERS. (Am. Compl. ¶ 13). Shuping was a partner with SMR. (Am. Compl. ¶ 13). Plaintiffs contend that MERS executed the Assignment using a State of Georgia corporate seal even though MERS dissolved the corporation in the State of Georgia as of June 4, 2008, and MERS is no longer registered in Georgia. (Am. Compl. ¶ 16).

Plaintiffs assert that the "Promissory note was not negotiated or assigned to BOA or BONY by CTX or CWB and BOA has never been the holder of the Note or the Security Deed." (Am. Compl. ¶ 18). Plaintiffs state that when they asked BOA to give them a chance to contact the lender, BOA told them that there was no lender, only an investor, and Plaintiffs could not contact the investors. (Am. Compl. ¶ 19). Plaintiffs

3

contend that as a result they have been denied actual knowledge of the holder of the Note or whether BOA is the real party in interest or the holder in due course. (Am. Compl. ¶ 19). Plaintiffs assert when BOA and SMR sent them copies of the Note in December 2010 and March 2011, Plaintiffs observed that they were different and indicated different terms of the deal.[1] (Am. Compl. ¶ 24).

Plaintiffs contend that they received a Notice of Default and Notice of Sale Under Power and Foreclosure Advertisement from BOA on May 27, 2011. (Am. Compl. ¶ 25). Plaintiffs also contend that the Notice was insufficient under O.C.G.A. § 44-14-162.2 because the Notice only included the name of BOA as the party to negotiate, amend, or modify the terms of the mortgage when BOA was just a servicer and did not have legal standing to initiate a foreclosure action. (Am. Compl. ¶¶ 25-26). Plaintiffs assert that they sent a letter offering to tender the amount remaining due under the loan to BOA at the address listed in BOA's payoff letter on March 24, 2011. (Am. Compl. ¶ 22).

In Count I of Plaintiffs' Amended Complaint, Plaintiffs allege that they are entitled to temporary and permanent injunctive relief to prevent the foreclosure sale of their home because Defendants are without standing to institute a foreclosure action. Plaintiffs also argue that Defendants have denied Plaintiffs the right to know the "actual holder in due course" and the name and address of the entity that is a "true secured party

---

[1] The Court has reviewed the Notes sent to Plaintiffs by BOA and SMR, which were attached to Plaintiffs' Amended Complaint, but the Court did not locate differences in the terms of the Notes or the Notes themselves with the exception that the quality of the second copy was different in that the width seemed to be stretched. (Compare p. 36 with p. 42, Docket Entry [9-2]).

4

of interest." Plaintiffs also appear to argue that Defendants have ignored the requirement to cease collection of the debt until they obtain verification of the debt and mail it to the consumer in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g. (Am. Compl. ¶¶ 59-72). In Count II of Plaintiffs' Amended Complaint, Plaintiff's seek a declaration that Defendants have no legal right to foreclose because Assignments from CTX and MERS were invalid, servicers cannot institute foreclosure actions, Defendants have withheld the identity of Plaintiffs "lawful lender," and Defendants failed to convey "the interest to the CWABS-TRUST according to the trust's governing documents." (Am. Compl. 73-83). In Count III (Fraud) of Plaintiffs' Amended Complaint, Plaintiff's contend that Andrew Shuping, with knowledge that BAC is a mere servicer with no authority to foreclose on the mortgage, signed an Assignment of the Security Deed on behalf of MERS as MERS's Vice President while he was still employed by SMR, added "unearned and highly inflated attorneys' fees to the principal balance of the note," and used a Georgia corporation seal for MERS when MERS is no longer registered in the state of Georgia. (Am. Compl. ¶¶ 84-92). Plaintiffs also contend that Defendants BOA and BONY "with full knowledge that Plaintiffs' loan is not even part of the alleged Trust, purposefully tried to produce false documentation and collected payments through misrepresentation and fraud." In Count IV (Slander of Title) of Plaintiffs' Amended Complaint, Plaintiffs assert that BOA advertised the impending foreclosure sale in the newspaper on three or four different occasions which disparaged their title and embarrassed Plaintiffs when their friends and colleagues asked whether their home was

5

going to be foreclosed. (Am. Compl. ¶¶ 93-96). In Count V (Interference With Contract and Business Relationships), Plaintiff's contend that Defendants refused to disclose the identity of the Note holder, which interfered with Plaintiffs' ability to sell the property to private parties and investors who indicated a willingness to purchase the property. (Am. Compl.¶¶ 97-102). In Plaintiffs' sixth cause of action (Suit for Quiet Title to Land), Plaintiffs also contend that title to their Property should be quieted and the Assignment from MERS to BOA should be rendered void because Shuping, instead of an "authorized signor for the beneficiary," signed the Assignment as Vice President of MERS. (Am. Compl. ¶¶ 98-104). Plaintiffs further appear to contend that the Assignment did not comply with the Pooling and Servicing Agreement because the "security instrument" was not properly endorsed or negotiated to the trust before May 31, 2011. In Count VII of Plaintiffs' Amended Complaint (Conspiracy), they argue that BOA misdirected them to default on their payments so that they could get a modification with a lower payment, but BOA ultimately raised their loan payments and assigned them a higher interest rate, in order to extort more money from them. (Am. Compl. ¶¶ 105-109). Plaintiffs further contend that Shuping executed a fraudulent assignment, which was also invalid under the terms of the Pooling and Servicing Agreement, so that he could foreclose on the property and gain 10% of the loan balance plus attorneys' fees. In Count VIII (Defamation), Plaintiffs assert that BOA advertised the impending foreclosure sale in the newspaper on three or four different occasions causing them contempt and ridicule. (Am. Compl. ¶¶ 110-11). In Count IX (Intentional Infliction of

Emotional Distress), Plaintiffs contend that unspecified acts by Defendants "constitute an outrage" and that Plaintiffs suffered emotional distress as a result. (Am. Compl. ¶¶ 112-15). In Count X (Negligence), Plaintiffs contend that Defendants committed tortious acts when they enforced a Security Deed which they knew was void, made a fraudulent assignment to CWABS-TRUST for the purpose of pursuing the instant nonjudicial foreclosure action, failed to mail a copy of the foreclosure sale notice to Plaintiffs, failed to identify the owner or holder of the Note within the notice, gave notice of default, advertised a foreclosure sale, and pursued an nonjudicial foreclosure based on an unenforceable Security Deed. (Am. Compl. ¶¶ 116-22). Lastly, in Plaintiffs' eleventh cause of action, Plaintiffs contend that Defendants, who allegedly operated as an enterprise, violated the Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. § 16-14-4 ("RICO") when they committed fraud, recorded fraudulent mortgages, created fraudulent assignments of mortgages, mailed fraudulent notices of foreclosure letters, advertised fraudulent notices of sales, and tried to enforce mortgages, security deeds, and trust deeds naming MERS as the grantee when MERS had no pecuniary interest in the transaction. (Amended Compl. ¶¶ 123-29).

Defendants contend that Plaintiffs' Amended Complaint should be dismissed because (1) it does not contain a decipherable short and plain statement of their claims and omits to include specific factual allegations in support of their claims; (2) Plaintiffs' claims based on the theory that BOA's efforts to initiate foreclosure were invalid because servicers cannot do so fail because under Georgia law, servicers may initiate

foreclosure proceedings; (3) Plaintiffs' claims based on the theory that there were irregularities in the securitization process and/or violations of the pooling and servicing agreement fail because Plaintiffs do not have standing to challenge the assignment of the Note and Security Deed or the Note's inclusion into a trust; (4) Plaintiffs' challenges regarding the validity of the Assignment fail because the Assignment comports with requirements under Georgia law, Shuping had authority to sign the Assignment on behalf of MERS, the pooling and servicing agreement did not require that the Assignment be recorded prior to the trust closing date, MERS has authority to assign the interests given by the Security Deed, and issues with the recordation does not invalidate the assignment between the parties to the assignment; (5) Plaintiffs' RESPA claims fail because they have abandoned them, Defendants have appropriately responded to all of Plaintiffs' written requests for information, and Plaintiffs have not alleged any damages resulting from purported RESPA violations; (6) Plaintiffs' FDCPA claim fails because they have abandoned it and because BOA was a servicer of Plaintiffs' loan and not a debt collector; (7) Plaintiffs' request for a temporary injunction is not proper because they have not tendered to the Court all sums due and owing under the Note and Security Deed and Plaintiffs cannot demonstrate a substantial likelihood of success on the merits of any of their claims; (8) Plaintiffs are not entitled to declaratory relief because servicers are authorized by Georgia law to initiate foreclosure proceedings, Plaintiffs do not have standing to challenge the Assignment or entry of their Note into the trust, and Plaintiffs have not pled any uncertainty or insecurity with regard to the propriety of their rights

8

which future action may jeopardize their interest; (9) Plaintiffs' fraud claim fails because they are not pled with particularity and they do not have standing to bring them; (10) Plaintiffs' conspiracy claim fails because it is inadequately pled, it is predicated on their inadequately pled and meritless fraud claim, and Plaintiffs have not alleged that they suffered any damages as a result of the alleged conspiracy; (11) Plaintiffs' RICO claim fails because it is not pled with particularity, Plaintiffs fail to allege two or more predicate acts that resulted in injury to them, the underlying fraud claim fails, and Plaintiffs fail to allege facts showing an enterprise; (12) Plaintiffs' Slander of Title and defamation claims fail because they do not show that the advertisements of the foreclosure sale were false or that they suffered special damages; (13) Plaintiffs' interference with contract and business relationships claim fails because they do not show that Defendants were strangers to the contract or business relationship giving rise to the contract; (14) Plaintiffs' quiet title claim fails because they lack standing to challenge the Assignment and they would not gain title to the property even if the Assignment was invalid; (15) Plaintiffs' intentional infliction of emotional distress claim fails because they are inadequately pled and Plaintiffs do not allege sufficiently outrageous conduct on the part of Defendants; and (16) Plaintiffs' negligence claims fail because they do not allege that BONY and BOA's actions caused them to suffer any injuries, and that any alleged injuries which would have occurred as a result of Defendants' actions would have affected the beneficiaries of the trust or CTX, not Plaintiffs.

## II.   LEGAL ANALYSIS

### A.   Motion to Dismiss Standard

Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief or it is based on an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford Cnty., 960 F.2d 1002, 1009-10 (11th Cir. 1992). A Rule 12(b)(6) motion to dismiss also tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To state a claim with sufficient specificity requires that the complaint have enough factual matter taken as true to suggest required elements of the claim. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1296 (11th Cir. 2007); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)).

### B.   Plaintiffs' Claims for Injunctive Relief

In Count I of Plaintiffs' Amended Complaint, they allege that they are entitled to temporary and permanent injunctive relief to prevent the foreclosure sale of their home.

AO 72A
(Rev.8/82)

Plaintiffs' Count I does not reference the facts upon which they rely to support their claim for injunctive relief. For the most part, in Count I, Plaintiffs do not articulate the argument as to why they are entitled to injunctive relief, other than to state in general terms that an Assignment was fraudulent, that unspecified forgery and misrepresentation occurred, an unspecified Defendant ignored its duty to validate the debt, Defendant BOA has no legal standing to initiate foreclosure proceedings, and Defendants have failed to disclose the "identity of the actual holder in due course." (Pls.' Am. Compl. ¶¶ 65, 66, 69). Under applicable law, this Court has no duty to search Plaintiffs' Complaint and try to ascertain which facts support which legal theory or to guess the legal theory upon which Plaintiffs are relying. GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), recognizing overruling on other grounds, Randall v. Scott, 610 F.3d 701 (11th Cir. 2010) (holding that although courts liberally construe pro se pleadings, the litigant is still required to conform to procedural rules, and this Court is not required to rewrite a deficient pleading). However, in deference to Plaintiffs' pro se status, the Court has done its best to ascertain the nature of Plaintiffs' claims.

  1. <u>Alleged Violations of the Pooling and Servicing Agreement</u>

It appears that Plaintiffs are alleging, often without factual support or much explanation of their legal theory, that Defendants do not have the authority to foreclose on their home due to their noncompliance with a pooling and servicing agreement ("PSA") which presumably assembled large numbers of mortgage assets, including their

11

mortgage, into a pool or trust so that investors may invest in them.[2]  By way of background, Plaintiffs are referring to the securitization process.  In the securitization process, "[m]ortgage loans are purchased from banks, mortgage companies and other originators and then assembled into pools by a governmental, quasi-governmental, or private entity.  The entity then issues securities that represent claims on the principal and interest payments made by borrowers on the loans in the pool . . . ."  See Securities and Exchange Commission, http://www.sec.gov/answers/mortgagesecurities.htm.  According to an economist with the International Monetary Fund:

[T]he process involves two steps.  In step one, a company with loans or other income-producing assets-the originator-identifies the assets it wants to remove from its balance sheet and pools them into what is called the reference portfolio. It then sells this asset pool to an *issuer*, such as a special purpose vehicle (SPV)–an entity set up, usually by a financial institution, specifically to purchase the assets and realize their off-balance-sheet treatment for legal and accounting purposes.  In step two, the issuer finances the acquisition of the pooled assets by issuing tradable, interest bearing securities that are sold to capital market investors.  The investors receive fixed or floating rate payments from a trustee account funded by the cash flows generated by the reference portfolio.  In most cases, the originator services the loans in the portfolio, collects payments from the original borrowers and passes them on – less a servicing fee–directly to the SPV or the trustee."

Andrea Jobst, Back to Basics:  What is Securitization, Fin. & Dev., Sep't 2008, at 48, www.imf.org/external/pubs/ft/fandd/2008/09/pdf/basics.pdf.

In this case, the PSA to which Plaintiffs refer identifies Countrywide Home Loans, Inc. as a seller, BONY as a Trustee, and CWABS, Inc. as the Depositor.  (Pl.'s Ex. P).

---

[2] Mortgage-Backed Securities (MBS) are debt obligations that represent claims to the cash flows from pools of mortgage loans, most commonly on residential property.

Plaintiffs argue that their loan was not properly assembled in the trust and securitized because (1) their Note was never actually transferred by CTX or its successors to the Depositor and it was never actually transferred from the Depositor to the Custodian on behalf of the Trustee for the Trust as required by the PSA (Am. Compl. ¶ 35); (2) there was never a valid delivery of Plaintiffs' Assignments of the Security Deed along with the Promissory Note to the Trust (Am. Compl. ¶¶ 40-42; (3) Countrywide Bank, N.A. "pledged, hypothecated, sold and/or assigned the promissory Note to the New York trust CWABS Asset Backed Certificates Trust 2007-8 . . . without proper assignment or endorsement" (Am. Compl. ¶ 10); and (4) an Assignment filed by Shuping, Morse & Ross, dated May 14, 2010, conveying interests given by the Security Deed from MERS to BONY was invalid because the Assignment did not occur within ninety days of the closing of the Trust in violation of the PSA (Am. Compl. ¶¶ 13-15, 48). Defendants contend that Plaintiffs do not have standing to challenge violations of the PSA because they do not allege facts showing that they suffered an injury traceable to violations of the PSA or that any alleged injury could be redressed by a favorable ruling. Defendants aver that any injury that could occur as a result of the breach of the PSA would be to investors and beneficiaries of the PSA, not Plaintiffs.

This Court agrees with Defendants. Because Plaintiffs were not a party to the PSA, they do not have standing to challenge any purported breach of the rights and obligations of it. See, e.g., Davis v. Bank of Am., N.A., No. 3:11–CV–3276–B, 2012 WL 2679452, at *3 (N.D. Tex. July 6, 2012); Blalock v. Wells Fargo Bank, N.A., No.

AO 72A
(Rev.8/82)

CIV. 12-693 ADM/LIB, 2012 WL 2529197, at *5 (D. Minn. June 29, 2012). Plaintiffs incomprehensibly claim that they have standing to challenge violations of the PSA because given that they would not have been able to obtain financing without the PSA, they are a third party beneficiary of it. Plaintiffs further contend that they have "the legal standing to question any fraud that is being committed on a contract" they signed that involves the real property that they own. (Pl.'s Resp. 5, 13). The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract. <u>Dillon v. Reid</u>, 312 Ga. App. 34, 40 (2011). The third-party beneficiary need not be specifically named in the contract; the dispositive issue is whether the parties' intention to benefit the third party is clearly shown on the face of the contract.[3] <u>Dillon</u>, 312 Ga. App. at 40; <u>Boller v. Robert W. Woodruff Arts Ctr.</u>, 311 Ga. App. 693, 698 (2011). Plaintiffs, however, fail to allege any facts showing how the contractual provisions allowing for securitization of Plaintiffs' and others' mortgage loans were intended to benefit Plaintiffs. While it is clear that agreements between Plaintiffs and the originators of their mortgage were intended to benefit Plaintiffs, the PSA was intended to benefit the parties to that agreement and theoretically the investors, not Plaintiffs. Accordingly, this Court cannot conclude that Plaintiffs have standing as a third party beneficiary to challenge noncompliance with the PSA. <u>In re Correia</u>, 452

---

[3] Plaintiffs contend, without factual support, that interpretation of the PSA is governed by New York state law. Even assuming Plaintiffs are correct, the result would be the same because New York law does not differ on this point. <u>See, e.g.</u>, <u>LaSalle Nat'l Bank v. Ernst & Young, LLP</u>, 729 N.Y.S.2d 671, 676 (N.Y. App. Div. 2001).

14

B.R. 319, 324 (B.A.P. 1st Cir. 2011) (agreeing that debtors were not third party beneficiaries of PSA, that debtors did not have standing to object to violations of the PSA, and investors who bought securities based upon the pooled mortgages would be the parties with standing to object to defects in those mortgages resulting from failure to abide by provisions in PSA); Sellers v. Bank of Am., N.A., No. 1:11–CV–3955–RWS, 2012 WL 1853005, at *4 (N.D. Ga. May 21, 2012); In re Cannellas, No.6:11–CV–1247–Orl–28DAB, 2012 WL 868772, at *3 (M.D. Fla. Mar. 14, 2012).

Even if Plaintiffs did have standing to challenge the PSA, however, Plaintiffs fail to advance any legal authority from Georgia showing that execution of a Security Deed in favor of MERS and MERS' recorded assignment of its rights in the Security Deed to BONY are rendered invalid merely because of some anomaly in compliance with a separate private agreement. Plaintiffs have attached to their Amended Complaint a recorded Security Deed, dated February 27, 2007, granting to MERS the interests in the Property as well as the right to exercise the power of sale in the event of Plaintiffs' failure to timely cure a default under the agreement. (Am. Compl. ¶ 6; Pls.' Ex. O). Additionally, a recorded Assignment of the Security Deed, dated May 14, 2010, assigns the interests in the Security Deed from MERS to BONY. (Am. Compl. ¶ 6; Pls.' Exs. D, O). Plaintiffs fail to provide any legal authority from Georgia, and this Court has not located any, showing that a recorded assignment becomes invalid merely because it was not made in compliance with a PSA or any other private agreement when no party to or beneficiary of the agreement has challenged the assignment. See, e.g., Metcalf v.

15

Deutsche Bank Nat'l Trust Co., No. 3:11–CV–3014–D, 2012 WL 2399369, at *4 (N.D.

Tex. June 26, 2012) (rejecting argument that an assignment becomes invalid merely

because it conflicts with the PSA or was made after the Trust was closed); Abubo v.

Bank of New York Mellon, No. 11–00312 JMS–BMK, 2011 WL 6011787, at *8 (D.

Haw. Nov. 30, 2011) (same); Long v. One West Bank, FSB, No. 11 C 703, 2011 WL

3796887, at *4 (N.D. Ill. Aug. 24, 2011) (same); cf. Pooler v. Taylor, 173 Ga. App. 859,

862 (1985) ("The failure of a party to perform his part of a contract does not per se

rescind it; the other party must manifest his intention to rescind."). Furthermore, even

if a prior agreement such as the PSA could have some affect on a subsequent assignment,

Plaintiffs do not point to any provision within the PSA which shows the parties' assent

that Assignments occurring in violation of the Agreement would be rendered void

automatically without any manifestation of intent by any party that the assignment be

considered void.

2.    Alleged Defects Within the Assignment From MERS to BONY

Plaintiffs further contend that BONY had no right to foreclose on their home

because other defects within the Assignment rendered it invalid. Specifically, Plaintiffs

contend that Andrew Shuping, who executed the Assignment on behalf of MERS, had

no authority to do so because he is a partner at the law firm pursuing the foreclosure.

(Am. Compl. ¶¶ 13, 52, 54). Plaintiffs further assert that signatures on behalf of MERS

were endorsed with a Georgia corporate seal for MERS even though MERS is no longer

a registered corporation in the state of Georgia. (Am. Compl. ¶¶ 14, 15). In response,

16

Defendants contend that Plaintiffs, who were not parties to the assignment of the Security Deed, do not have standing to challenge it.

Defendants are correct. As strangers to the Assignment contract, Plaintiff lacks standing to challenge it. See, e.g., McFarland v. BAC Home Loans Servicing, LP, No. 1:11–CV–04061–RWS, 2012 WL 2205566, at *3 (N.D. Ga. June 14, 2012) (rejecting plaintiff's claim that defendant did not have "standing" to foreclose because foreclosing attorney did not have authority to sign assignment on behalf of MERS); Adams v. Mortg. Elec. Registration Sys., Inc., No. 1:11-CV-04263-RWS, 2012 WL 1319453, at *8 (N.D. Ga. Apr. 16, 2012) (denying leave to amend complaint to add wrongful foreclosure claim challenging corrective assignment as improper where plaintiff alleged that signors did not have authority to execute corrective assignment because plaintiff was not a party to the corrective assignment and had no standing to challenge its validity); Bandele v. Deutsche Bank Nat'l Trust Co., No. 1:11–CV–4257–TWT, 2012 WL 1004990, at *2 (N.D. Ga. Mar. 22, 2012) (concluding that plaintiffs did not have standing to challenge the assignment of the security deed because they were not a party to the assignment); Montoya v. Branch Banking & Trust Co., No. 1:11–CV–01869–RWS, 2012 WL 826993, at *4 n.3 (N.D. Ga. Mar. 9, 2012) (holding that plaintiff did not have standing to challenge assignment as defective due to forgery); Rosenhaft v. BAC Home Loans Servicing, LP, No. 1:11–CV–2519–TWT, 2012 WL 484842, at *2 (N.D. Ga. Feb. 14, 2012); Breus v. McGriff, 202 Ga. App. 216 (1991) ("[S]trangers to the assignment contract . . . have no standing to challenge its validity."); but see Sutton v. Bank of Am.,

N.A., No. 1:11–CV–3765–CAP, 2012 WL 2394533, at *5 (N.D. Ga. Apr. 11, 2012) (declining to follow reasoning that plaintiff who was not party to assignment does not have standing to challenge its validity and concluding that reasoning might not apply to a debtor challenging whether a foreclosure was proper based on invalidity of assignment and distinguishing Breus).

### 3. Notice of Foreclosure Sale by Servicer

Plaintiffs further argue that BOA, as a servicer, did not have legal standing to initiate a foreclosure action. In support, Plaintiffs contend that the notice of foreclosure sale that BOA sent them prior to the foreclosure sale did not comply with the notice requirements of O.C.G.A. § 44-14-162.2 because it merely identified the loan servicer and not the party which had full authority to negotiate, amend, or modify the terms of the mortgage. (Am. Compl. ¶ 26). Defendants contend in response that BOA, as the servicer, could provide notice to Plaintiffs on behalf of the secured creditor.

Plaintiffs properly state a claim for injunctive relief due to Defendants' alleged failure to comply with the notice provisions of O.C.G.A. § 44-14-162.2. O.C.G.A. § 23-2-114 places creditors under the duty to exercise the power of sale fairly. When the grantee does not comply with the statutory duty to exercise the power of sale in a deed to secure debt fairly, the debtor may obtain injunctive relief. Atlanta Dwellings, Inc. v. Wright, 272 Ga. 231, 233 (2000). Georgia Courts have found that a bank breaches the duty to fairly exercise the power of sale created by O.C.G.A. § 23-2-114 when a bank fails to provide proper notice of the foreclosure sale required by O.C.G.A. § 44-14-162

18

et seq. Roylston v. Bank of Am., N.A., 290 Ga. App. 556, 559 (2008); Calhoun First Nat'l Bank v. Dickens, 264 Ga. 285, 286 (1994); see also Campbell v. Bank of Am., N.A., No. 1:10–CV–3657–JEC, 2012 WL 879222, at *2 (N.D. Ga. Mar. 12, 2012). . Failure to provide the required notice under the statute is grounds for setting aside the foreclosure or damages for the tort of wrongful foreclosure. Roylston, 290 Ga. App. at 559.

"[F]or loans secured by residential property, O.C.G.A. § 44–14–162.2 specifies the required elements of the notice letter that a creditor must send prior to the nonjudicial foreclosure sale." Stubbs,, 2012 WL 516972, at *2. Pursuant to O.C.G.A. § 44–14–162.2, a creditor must advise the homeowner of the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor no later than thirty days before the date of the proposed foreclosure. O.C.G.A. § 44–14–162.2. Although a servicer may initiate foreclosure proceedings on behalf of a secured creditor by sending statutory notice of the impending foreclosure proceedings, the servicer must identify the secured creditor in the notice. See Reese v. Provident Funding Assoc., No. A12A0619, 2012 WL 2849700, at *2, 4 (Ga. Ct. App. July 12, 2012) citing Stubbs v. Bank of America, No. 1:11–CV–1367–AT, 2012 WL 516972, at *1, 5 (N.D. Ga. Feb.16, 2012) ("While it may be of no consequence who actually sends the notice, and that task may properly be delegated to a servicing agent (or, as is often the case, an attorney) the amendments of sections 162 and 162.2 in 2008 make clear that the identity of the secured creditor

19

conducting the sale is a material element of that notice."). In <u>Reese v. Provident Funding Assoc.</u>, No. A12A0619, 2012 WL 2849700 (Ga. Ct. App. July 12, 2012), the Georgia Court of Appeals recently concluded that the statutory notice under O.C.G.A. § 44–14–162.2 must properly identify the secured creditor and reflect that the notice is being sent by the secured creditor or by an entity with authority on behalf of the secured creditor. <u>Id.</u> at *2.

In this case, Plaintiffs assert that the notice did not comply with O.C.G.A. § 44–14–162.2 because it "only contained" the name of BOA who was "just a servicer." (Pls.' Am. Compl. ¶ 26). Thus, assuming the facts as alleged in the Amended Complaint as true, the Notice did not comply with O.C.G.A. § 44–14–162.2's requirement that the secured creditor be identified because, according to the Assignment of the Security Deed, BOA was not a secured creditor. The Assignment assigned the interests in the Security Deed from MERS to BONY, not BOA. Thus, Plaintiffs have alleged enough to make it plausible that due to the failure of notice, the power of sale was being exercised unfairly. <u>Reese</u>, 2012 WL 2849700, at *2; <u>Roylston</u>, 290 Ga. App. at 559; <u>Calhoun First Nat'l Bank</u>, 264 Ga. at 286.

4.    <u>Tender</u>

Defendants contend that even if Plaintiffs had shown that some irregularity in the foreclosure process, their claim for injunctive relief still fails because they have not tendered what is owed under their Note. "Under the codified, long-recognized maxim that 'he who would have equity must do equity, and give effect to all equitable rights in

20

the other party respecting the subject matter of the suit,' a borrower who has executed a deed to secure debt is not entitled to an injunction against a sale of the property under a power in the deed, unless he first pays or tenders to the creditor the amount admittedly due." Crockett v. Oliver, 218 Ga. 620, 621 (1963); see also Taylor, Bean & Whitaker Mortg. Corp. v. Brown, 276 Ga. 848, 850 (2003); Hill v. Filsoof, 274 Ga. App. 474, 475 (2005).

Plaintiffs, however, assert in their Amended Complaint that Defendants failed to accept their offer of tender of the balance due on the debt. Plaintiffs state that before they filed their Complaint, they sent a letter to Defendants requesting that Defendants appear at Plaintiffs' home on March 30, 2011, at 9:00 a.m. to accept tender of $305,500.00 or that BAC contact them to make alternative arrangements. (Pls.' Br. 15; Am. Compl. ¶¶ 21-22, Ex. H (Docket Entry [9-2])). Defendants present no argument or authority as to why the offer of tender is not sufficient under Georgia law. Defendants only argue that Plaintiffs made no offer of tender. Given that this Court is required to accept Plaintiffs' allegations as true for purposes of a Motion to Dismiss and no argument has been made as to why the tender offered was not acceptable, dismissal for failure to offer tender is not appropriate at this time.

### 5.    O.C.G.A. § 9-5-3

Defendants further contend that injunctive relief is not appropriate pursuant to O.C.G.A. § 9-5-3 because Plaintiffs can avail themselves of available legal defenses during the foreclosure process. However, O.C.G.A. § 9-5-3 does not apply under the

facts of this case because there are no allegations within Plaintiffs' Amended Complaint that they are seeking to enjoin any proceedings or processes of *a court of law*. O.C.G.A. § 9-5-3 provides that "equity will not enjoin the proceedings and processes *of a court of law*, absent some intervening equity or other proper defense of which a party, without fault on his part, cannot avail himself at law." (Defs.' Br. 36). Plaintiffs have not alleged within their Amended Complaint that they are seeking to enjoin any proceedings of a court of law or that proceedings pertaining to the foreclosure of their home will occur in a court of law. Indeed, it appears that the Security Deed provides Defendants with the opportunity to conduct a nonjudicial foreclosure sale of Plaintiffs property; thus, it is apparent that no Court proceedings will be involved where Plaintiffs may present their defenses. (Pls.' Ex. O).

      6.    <u>Elements for Injunctive Relief</u>

Lastly, Defendants argue that Plaintiffs' injunctive relief claim should be dismissed because Plaintiffs cannot demonstrate the elements of a claim for injunctive relief. A movant must establish the following four factors before a court will grant a party's motion for a temporary restraining order or a preliminary injunction: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered if the relief is not granted; (3) the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) entry of relief would serve the public interest. <u>See</u> <u>KH Outdoor, LLC v. City of Trussville</u>, 458 F.3d 1261, 1268 (11th Cir. 2006); <u>Schiavo v. Schiavo</u>, 403 F.3d 1223, 1225-26 (11th Cir. 2005); <u>Am. Red Cross v. Palm Beach Blood

Bank, Inc., 143 F.3d 1407, 1410 (11th Cir. 1998).

In this case, assuming the facts of the Amended Complaint as true, Plaintiffs may be able to demonstrate a likelihood of success on the merits based on the improper notice, irreparable harm may occur because losing their house is a grievous injury, there is no indication in this case that Defendants would suffer greater harm than Plaintiffs, and the public interest is served by ensuring that notice of foreclosure sales comply with Georgia law. See, e.g., Ziemba v. Am. Home Mortg. Servicing, Inc., No. 1:10–CV–02781–RWS, 2010 WL 4721344, at *2-3 (N.D. Ga. Nov. 15, 2010); Focus Entertainment Internat'l v. Partridge Greene, Inc., 253 Ga. App. 121, 127 (2001) ("[W]hen an interest in land is threatened with harm, equitable injunctive relief is appropriate, because such harm is deemed to be irreparable to the unique character of the property interest, i.e., money damages are not adequate compensation to protect the interest harmed."). Accordingly, Defendants' Motion to Dismiss Plaintiffs' claim for injunctive relief should be **DENIED** as to Plaintiffs' claim that they did not receive proper statutory notice of the foreclosure sale.

### C.  Plaintiffs' Claims for Declaratory Relief

In Count II of Plaintiffs' Amended Complaint, Plaintiffs seek a declaration that Defendants have no standing to foreclose on their property for the same reasons they articulated in their claims for injunctive relief. (Am. Compl. 73-83). Defendants contend in response that Plaintiffs' claim for declaratory judgment fails because, as discussed in connection with their claims for injunctive relief, the theories upon which

23

Plaintiffs base their argument that Defendants do not have standing to foreclose fail as a matter of law. With one exception, Defendants are correct in that all of Plaintiffs' theories supporting their argument that Defendants do not have standing to foreclose fail as a matter of law. Because Plaintiffs' theory that Defendants failed to comply with the statutory duty to exercise the power of sale in a deed to secure debt fairly due to the improper notice of foreclosure should survive Defendants' Motion to Dismiss, Plaintiffs' request for declaratory judgment in this regard should not be dismissed. Conversely, Plaintiffs' request for declaratory judgment based on the aforementioned failed theories, however, should be **DISMISSED**.

Defendants further argue that Plaintiffs' claims for declaratory relief fail because Plaintiffs have not pled any "uncertainty or insecurity with regard to the propriety of [P]laintiffs' alleged rights and which future action, without such directions, might reasonably jeopardize the [P]laintiffs' interest." In support, Defendants rely upon Henderson v. Alverson, 217 Ga. 541 (1962). In that case, the plaintiff sought to have a constitutional amendment declared unconstitutional and void as being improperly adopted. Id. at 541. The Georgia Supreme Court concluded that the plaintiff in that case was not entitled to declaratory relief because there was no present dispute between plaintiff and those that would enforce the constitutional provision that would jeopardize some interest of the plaintiff. The court, in that case, pointed out that the Declaratory Judgment Act makes no provision for a judgment that is merely advisory and therefore, no grounds for a declaration of rights existed.

24

In this case, however, Plaintiffs do not seek merely an advisory provision. Plaintiffs have received a notice of foreclosure indicating a present intent to foreclose on their home. As discussed above, assuming the facts in the light most favorable to the Plaintiffs, Defendants' notice was allegedly noncompliant with O.C.G.A. § 44-14-162.2. As a result, the Defendants might not have complied with the statutory duty to exercise the power of sale in a deed to secure debt fairly. Thus, Plaintiffs do not seek an advisory opinion on a hypothetical controversy, but seek the court's assistance in resolving uncertainty and insecurity regarding an immediate threat of foreclosure on their home. Therefore, Defendants' Motion to Dismiss should be **DENIED** as to Plaintiffs' claim for declaratory relief based upon Plaintiffs' theory that Defendants failed to comply with the statutory duty to exercise the power of sale in a deed to secure debt fairly due to the improper notice of foreclosure.

D. **Plaintiffs' FDCPA and RESPA Claims**

Plaintiffs appear to attempt to assert a claim pursuant to Real Estate Settlement Procedures Act, 12 U.S. C. § 2601 ("RESPA"), in their Amended Complaint because they allege that despite their inquiries, Defendants have denied Plaintiffs the right to know the "actual holder in due course" and the name and address of the entity that is a "true secured party of interest." Plaintiffs also appear to assert claims pursuant to the FDCPA, because they assert that Defendants have ignored that they must cease collection of the debt until they obtain verification of the debt and mail it to the consumer. (Am. Compl. ¶¶ 59-72). Defendants offer various reasons why Plaintiffs'

25

FDCPA and RESPA claims fail as a matter of law. (Defs.' Br. 26-34). In Plaintiffs' Response to Defendants' Motion to Dismiss, that state that they are " not bringing any action under federal law," that they mentioned RESPA and FDCPA violations only for the purpose of demonstrating their due diligence in working with the servicer, and that they are "not claiming any damages for the Defendants' RESPA and FDCPA violations." (Pl. Br. 7, 15). Accordingly, to the extent that Plaintiffs' Amended Complaint could be interpreted as asserting claims pursuant to RESPA and the FDCPA, the claims should be **DISMISSED**.

### E.   Plaintiffs' Fraud Claims

In Count III (Fraud) of Plaintiffs' Amended Complaint, Plaintiffs contend that Andrew Shuping, with knowledge that BAC had no authority to foreclose on the mortgage, signed an Assignment of the Security Deed on behalf of MERS as MERS's Vice President, while he was still a partner at SMR. Plaintiffs also contend that Shuping added "unearned and highly inflated attorneys' fees to the principal balance of the note," and used a Georgia corporation seal for MERS even though MERS is no longer registered in the state of Georgia. (Am. Compl. ¶¶ 84-92). Plaintiffs further contend that Defendants BOA and BONY "with full knowledge that Plaintiffs' loan is not even part of the alleged Trust, purposefully tried to produce false documentation and collected payments through misrepresentation and fraud." Defendants contend that Plaintiffs' fraud claim fails because they are not pled with particularity and Plaintiffs do not have standing to bring them.

AO 72A
(Rev.8/82)

Plaintiffs do not adequately plead their fraud claims. Rule 9 requires that Plaintiffs' fraud claim be described with particularity. Fed. R. Civ. P. 9; <u>Thomas v. Pentagon Fed. Credit Union</u>, 393 F. App'x 635, 638 (11th Cir. 2010); <u>Am. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1291-92 (11th Cir. 2010); <u>Serefex Corp. v. Hickman Holdings, LP</u>, 695 F. Supp. 2d 1331, 1342 (M.D. Fla. 2010) (dismissing fraud claim because plaintiff failed to plead the "who, what, when, where, and how" of the fraud). To state a claim for fraud against BOA or BONY, Plaintiffs must allege facts showing that they knowingly made false statements, that they made those statements with an intention to induce Plaintiffs to act or refrain from acting in reliance on the statements, that Plaintiffs justifiably relied on the false statements, and that Plaintiffs were damaged as a result. <u>See, e.g.</u>, <u>Eason Publ'ns, Inc. v. NationsBank of Ga.</u>, 217 Ga. App. 726, 730 (1995); <u>Maddox v. S. Eng'g Co.</u>, 216 Ga. App. 6, 7 (1994).

Applying the law to the facts of this case, Plaintiffs' fraud claims should be dismissed because they failed to plead particularized facts in support. For instance, Plaintiffs fail to allege facts showing that they reasonably relied on alleged fraudulent statements by BOA or BONY, or were induced to act in some way, to their detriment. <u>See, e.g.</u>, <u>Minnifield v. Johnson & Freedman, LLC</u>, 448 F. App'x 914, 917 (11th Cir. 2011) (dismissing fraud claim because plaintiff failed to plead any facts with sufficient particularity to demonstrate scienter on the part of defendant).

Furthermore, although Plaintiffs state that BOA "indirectly suggested" that Plaintiffs default on their payments to qualify for a loan modification, Plaintiffs fail to

AO 72A
(Rev.8/82)

particularly state the content of the alleged fraudulent statements, who made the statements, or when the statements were made. Am. Compl. ¶ 9; Fed. R. Civ. P. 9; Thomas, 393 F. App'x at 638 (holding that plaintiff who pled that defendant fraudulently changed the terms of his promissory note failed to adequately plead fraud claim because he did not identify specific statements made by the defendants); Am. Dental Ass'n, 605 F.3d at 1291-92 (pointing out that all averments of fraud must be stated with particularity and include (1) the precise statements, documents, or misrepresentations made, (2) the time, place, and person responsible for the statement, (3) the content and manner in which these statements misled the plaintiffs, and (4) what the defendants gained by the alleged fraud); Serefex Corp., 695 F. Supp. 2d at 1342 (dismissing fraud claim because plaintiff failed to plead the "who, what, when, where, and how" of the fraud). Furthermore, Plaintiffs do not indicate in what way the statements were false. "Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events." Infrasource v. Hahn Yalena Corp., 272 Ga. App. 703, 707 (2005). Moreover, to the extent that the basis for Plaintiffs' fraud claim is that the Assignment to BONY did not comply with the PSA or that Shuping did not have authority to execute the Assignment, as discussed above, Plaintiffs do not have standing to challenge the Assignment on those grounds. Accordingly, Plaintiffs' fraud claim should be **DISMISSED**.


**F.** **Plaintiffs' Conspiracy Claim**

In Count VII of Plaintiffs' Amended Complaint (Conspiracy), Plaintiffs again argue that BOA misdirected them to default on their payments so that they could get a modification with a lower payment, but BOA ultimately raised their loan payments and assigned them a higher interest rate, in order to extort more money from them. (Am. Compl. ¶¶ 105-109). Plaintiffs again contend that Shuping executed a fraudulent assignment so that he could foreclose on the property and earn more fees and that the Assignment was untimely and therefore invalid under the terms of the PSA. Defendants contend that Plaintiffs' conspiracy claim should be dismissed because it is inadequately pled, it is predicated on their inadequately pled and meritless fraud claim, and Plaintiffs have not alleged that they suffered any damages as a result of the alleged conspiracy.

"A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." Mustageem-Graydon v. SunTrust Bank, 258 Ga. App. 200, 207 (2002). To recover damages for a civil conspiracy claim, the plaintiff must demonstrate that "two or more persons, acting in concert, engaged in conduct that constitutes a tort." Mustageem-Graydon, 258 Ga. App. 200, 206 (2002). Absent an underlying tort, there can be no liability for civil conspiracy. Mustageem-Graydon, 258 Ga. App. at 206. In this case, Plaintiff's conspiracy claim is predicated on fraud by Defendants. Because Plaintiffs' predicate fraud claim is inadequately pled, Plaintiff's conspiracy claim should also be **DISMISSED**. See, e.g., Mustageem-Graydon, 258 Ga. App. at 206 (granting summary judgment as to conspiracy claim because underlying fraud claim failed as a matter of law).

29

## G.    Plaintiffs' RICO Claim

In Plaintiffs' eleventh cause of action, Plaintiff's contend that Defendants, who allegedly operated as an enterprise, violated the Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. § 16-14-4 et. seq. ("RICO"), when they committed fraud, recorded fraudulent mortgages, created fraudulent assignments of mortgages, mailed fraudulent notices of foreclosure letters, advertised fraudulent notices of sales, and tried to enforce mortgages, security deeds, and trust deeds naming MERS as the grantee when MERS had no pecuniary interest in the transaction.  (Amended Compl. ¶¶ 123-29). Defendants contend that Plaintiffs' RICO claim fails because it is not pled with particularity, Plaintiffs fail to allege two or more predicate acts that resulted in injury to them, the underlying fraud claim fails, and Plaintiffs fail to allege facts establishing an enterprise.

Under O.C.G.A. § 16-14-4, it is "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money."  In order to state a Georgia RICO claim, Plaintiffs must allege a pattern of racketeering activity.  A pattern of racketeering activity is defined as "[e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents . . . ."  O.C.G.A. §

16–14–3(8)(A); <u>Zephir v. BAC Home Loan Servicing, LP</u>, No. 1:11-CV-2429-CAP, 2011 WL 8167817, at *4 (N.D. Ga. Sept. 27, 2011); <u>Smith v. Chemtura Corp.</u>, 297 Ga. App. 287, 292 (2009). Racketeering activity means "to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit any crime which is chargeable by indictment" under certain categories of Georgia, federal, or other states' criminal laws. O.C.G.A. § 16–14–3(9).

In the instant action, Plaintiffs fail to allege two predicate acts of racketeering activity because they fail to allege Defendants' involvement in two or more acts which violated federal or state criminal law. Plaintiffs generally allege multiple acts by Defendants within their Eleventh Count, but Plaintiffs fail to plead specific supporting facts showing that any of the alleged acts violate the categories of criminal laws within the Georgia RICO statute. Plaintiffs argue in their brief that "the defendant" committed "an" act of racketeering by recording a fraudulent document by committing a forgery, a felony crime. (Pls.' Br. 21). In doing so, Plaintiffs have only argued that one predicate act has occurred, not the two predicate acts required by the Act. <u>Zephir</u>, 2011 WL 8167817, at *4. Additionally, Plaintiffs fail to plead any facts showing that there was a forgery. Although Plaintiffs argue that Shuping signed the Assignment on behalf of MERS when he did not have authority to do so, they fail to allege facts showing that Shuping's signature was a forgery. Under Georgia law, "a forgery occurs where one person signs the name of another person while holding out that signature to be the actual signature of the other person." <u>See</u> <u>Deutsche Bank Nat'l Trust Co. v. JP Morgan Chase</u>

Bank, N.A., 307 Ga. App. 307, 313 (2010); see also O.C.G.A. § 16-9-1 (requiring use of a fictitious name or another person's name). In this case, however, Plaintiffs do not allege that the individual who signed Shuping's name was not Shuping, they just allege that Shuping did not have authority to sign the document on behalf of MERS. Thus, Plaintiffs have not alleged facts showing that the Assignment was forged or a violation of a criminal law enumerated within the RICO statute occurred. Accordingly, Plaintiffs have failed to allege facts showing a pattern of racketeering activity, and Plaintiffs' RICO claim should be **DISMISSED**. See, e.g., Zephir, 2011 WL 8167817, at *4; Albert v. Citimortgage, Inc., No.1:10–CV–03238–RWS, 2011 WL 1085148, at *3 (N.D. Ga. Mar. 21, 2011) (dismissing Georgia RICO claim because the plaintiff failed to allege facts showing that defendant engaged in any criminal misconduct that is actionable under RICO).

### H. Plaintiffs' Slander of Title and Defamation Claims

In Count IV (Slander of Title) and Count VIII (Defamation) of Plaintiffs' Amended Complaint, they contend that BOA's advertisement of the impending foreclosure sale in the newspaper on three or four different occasions embarrassed them because their friends and colleagues asked whether their home was going to be foreclosed. (Am. Compl. ¶¶ 93-96, Am. Compl. ¶¶ 110-11). In Count IV, Plaintiffs also contend that the advertisements disparaged their title. Plaintiffs' Slander of Title and defamation claims fail because Plaintiffs do not show that the advertisements of the foreclosure sale were false or that they suffered special damages. In response, Plaintiffs

contend that Defendants falsely stated within the advertisement that Defendants are the holder in due course and that they suffered emotional distress damages which cannot be quantified. (Pls.' Br. 21-22).

The owner of property may bring an action for "libelous or slanderous words which falsely or maliciously impugn his title" if he suffers damages as a result. O.C.G.A. § 51-9-11; <u>Latson v. Boaz</u>, 278 Ga. 113, 114 (2004). In order to sustain the action, "the plaintiff must allege and prove the uttering and publishing of the slanderous words; that they were false; that they were malicious; that he sustained special damage thereby; and that he possessed an estate in the property slandered." <u>Latson</u>, 278 Ga. at 114, <u>citing</u> <u>Amador v. Thomas</u>, 259 Ga. App. 835, 837 (2003). Similarly, to establish a claim for defamation, the plaintiff must prove (1) that defendants made a false or defamatory statement regarding plaintiff; (2) an unprivileged communication to a third party occurred; (3) fault by the defendant amounting to at least negligence; and (4) special damages or defamatory words which were injurious on their face. <u>Chaney v. Harrison & Lynam, LLC</u>, 308 Ga. App. 808, 811 (2011).

The Georgia Supreme Court has already concluded that the advertisement of a sale under power granted in a deed to secure debt is not libelous. <u>Smith v. Citizens & Southern Fin. Corp.</u>, 245 Ga. 850, 853 (1980); <u>see also</u> <u>Rome Bank & Co. v. Kerce</u>, 140 Ga. App. 596, 600 (1976). Furthermore, Defendants are correct in that Plaintiffs' Amended Complaint does not assert any facts indicating that statements within the advertisement for the foreclosure sale were false. Although Plaintiffs argue in their brief

33

that the advertisement was false because it stated that Defendants were the holder in due course, the Court is required to limit its consideration to the facts of Plaintiffs' Amended Complaint and not additional unsubstantiated facts Plaintiffs argue in their brief. <u>GSW, Inc. v. Long Cnty.</u>, 999 F.2d 1508, 1510 (11th Cir. 1993) (Court is required to accept the facts as set forth in the complaint as true and limit its consideration to the pleadings and exhibits attached thereto); <u>In re Androgel Antitrust Litigation</u>, 687 F. Supp. 2d 1371, 1381 (N.D. Ga. Feb. 22, 2010) (holding that "in the post-Twombly world," a plaintiff cannot amend his complaint by argument of counsel made in opposition to motion to dismiss because the complaint is judged as it is and not on whether a set of facts would be imagined that would support the claim). Even if the Court were to consider Plaintiffs' argument within their brief, however, it would not do much to advance their cause. Plaintiffs statements within their brief fail to identify which defendant was falsely identified as the holder in due course or the substance of the alleged false statement. Furthermore, Plaintiffs fail to explain how such statements were false or how the misidentification of the "holder in due course" within the notice caused them embarrassment or impugned their title. Accordingly, Plaintiffs' defamation and slander of title claims should be **DISMISSED**.

## I.    <u>Interference with Contract and Business Relationships</u>

In Count V (Interference With Contract and Business Relationships) of Plaintiffs' Amended Complaint, they contend that Defendants' refusal to disclose the identity of the note holder interfered with their ability to sell the property to private parties and

investors who indicated a willingness to purchase the property. (Am. Compl.¶¶ 97-102). Defendants contend that Plaintiffs' claim fails because Plaintiffs do not allege facts supporting the elements of such a claim and do not show that Defendants were strangers to the contract or business relationship giving rise to the contract. In response, Plaintiffs simply state the elements of an interference with contract and business relationships claim. Plaintiffs' minimal response, however, fails to address Defendants' legal contentions. The law is well settled in this circuit that a legal claim or argument that has not been briefed is deemed abandoned and the mere mention of an argument without any supporting substantive analysis is not sufficient. See Warren v. Countrywide Home Loans, Inc., 342 F. App'x 458, 459 (11th Cir. 2009); Dawkins v. Glover, 308 F. App'x 394, 395 (11th Cir. 2009); Seay v. United States, 166 F. App'x 422 (11th Cir. 2006) (Petitioner's mere statement that the district court improperly dismissed his complaint on res judicata grounds without any substantive argument in support amounted to abandonment of his claims even though he argued the merits of his underlying claims). Moreover, issues cryptically raised in passing and not clearly raised are deemed abandoned. APA Excelsior III L.P. v. Premiere Techs., Inc., 476 F.3d 1261, 1270 (11th Cir. 2007). Accordingly, Plaintiffs' tortious interference with contract and business relationships claim should be **DISMISSED**.

## J. Plaintiffs' Quiet Title Claim

In Plaintiffs' Sixth cause of action (Suit for Quiet Title to Land), Plaintiffs contend that title to their Property should be quieted and the Assignment from MERS to BOA

35

should be rendered void because Shuping, instead of an "authorized signor for the beneficiary," signed the Assignment as Vice President of MERS. (Am. Compl. ¶¶ 98-104). Plaintiffs further appear to contend that the Assignment did not comply with the PSA because the "security instrument" was not properly endorsed or negotiated to the trust before May 31, 2011. Defendants argue that Plaintiffs' quiet title claim fails because Plaintiffs lack standing to challenge any alleged defects within the Assignment or noncompliance with the PSA and because Plaintiffs lack superior title, Plaintiffs would not gain title to the property even if the Assignment were invalid. In response, Plaintiffs reiterate their prior arguments that the Assignment was fraudulent because Shuping forged it and did not have signing authority and that their Note was not transferred or endorsed into the trust. As discussed above, however, under the facts as alleged, Shuping did not forge the Assignment because he signed his own name. Additionally, Plaintiffs do not have standing to challenge other defects within the Assignment or Defendants' alleged noncompliance with the PSA. Accordingly, Plaintiffs' quiet title claim should be **DISMISSED**.

### K. <u>Intentional Infliction of Emotional Distress</u>

In Count IX (Intentional Infliction of Emotional Distress), Plaintiffs contend that unspecified acts by Defendants "constitute an outrage" and that Plaintiffs suffered emotional distress as a result. (Am. Compl. ¶¶ 112-15). Defendants argue that Plaintiffs' intentional infliction of emotional distress claim fails because they omit to plead any facts in support of their claim and have not alleged sufficiently outrageous

36

conduct on the part of Defendants.  Plaintiffs do not respond to Defendants' argument and have therefore abandoned their claim.  Accordingly, Plaintiffs' intentional infliction of emotional distress claim should be **DISMISSED**.

### L.    Negligence

In Count X (Negligence), Plaintiffs contend that Defendants committed tortious acts when they enforced a Security Deed which they knew was void, made a fraudulent assignment to CWABS-TRUST for the purpose of pursuing the instant nonjudicial foreclosure action, gave notice of default, advertised and pursued an nonjudicial foreclosure based on an unenforceable Security Deed, failed to mail a copy of the foreclosure sale notice to Plaintiffs, and failed to identify the owner or holder of the promissory Note within the notice.  (Am. Compl. ¶¶ 116-22).  Defendants argue that Plaintiffs' negligence claim fails because Plaintiffs do not allege that BONY and BOA's actions caused any injury, and that any alleged injuries which would have occurred as a result of Defendants' actions would have affected the beneficiaries of the trust or CTX, not Plaintiffs.

Plaintiffs' negligence claim fails because it is inadequately pled.  To recover injuries for negligence, Plaintiffs must show four elements: (1) a duty; (2) a breach of that duty; (3) causation; and (4) damages.  <u>Johnson v. Am. Nat'l Red Cross</u>, 276 Ga. 270, 272 (2003).  Plaintiffs have not adequately pled their negligence claim because it solely comprised of legal conclusions; they have failed to plead specific facts within their negligence claim or reference specific facts from within the other sections of their

Complaint. Furthermore, as Defendants point out, Plaintiffs fail to allege that any alleged duties that were breached caused them to suffer damages. Accordingly, Plaintiffs' negligence claim should be **DISMISSED**.

## PLAINTIFFS' JOINT MOTION FOR LEAVE TO AMEND COMPLAINT AND EXTENSION OF TIME TO AMEND COMPLAINT AND BONY'S MOTION FOR LEAVE TO FILE SUR-REPLY

In Plaintiffs' Joint Motion for Leave to Amend Complaint, they seek leave of the Court to add claims pursuant to the Uniform Commercial Code, RESPA, the Truth in Lending Act, and the Fair Credit Reporting Act. Docket Entry [32]. After Defendants opposed the Motion on the grounds that Plaintiffs failed to submit a Proposed Amended Complaint, Plaintiffs attached their Proposed Second Amended Complaint, including no less than fourteen additional claims, to their Reply brief. Defendants then filed a Motion for leave to file a sur-reply so that they could oppose the Proposed Second Amended Complaint. For good cause shown, Defendants' Motion is **GRANTED**. Docket Entry [37].

As noted by Defendants in their Sur-Reply, granting Plaintiffs' request for leave to amend is inappropriate because Plaintiffs' Proposed Second Amended Complaint appears frivolous, is unsubstantiated by specifically pled facts, and is a shotgun pleading. The court's leave to amend shall be freely given "when justice so requires." Foman v. Davis, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15. Valid reasons for denying a motion to amend, however, include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." Foman, 371 U.S. at 182; Equity Lifestyle Props. v. Fla. Mowing and Landscape Serv., 556 F.3d 1232, 1241 (11th Cir. 2009).

Applying the law to the facts of the instant action, this Court finds that there are at least two reasons why Plaintiffs' Proposed Second Amended Complaint should be denied. First, Plaintiffs' Proposed Second Amended Complaint is futile in part because it is based in large part on the same arguments regarding the Assignment from MERS to BONY and alleged anomalies in the securitization process raised in their Amended Complaint. As discussed above, this Court has already recommended adjudication of these issues in Defendants' favor in connection with Defendants' Motion to Dismiss.

Second, Plaintiffs' Proposed Second Amended Complaint, which raises no less than fourteen new causes of action, is futile because it is a shotgun pleading. A shotgun pleading is defined by "the failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading." Beckwith v. Bellsouth Telecomms., Inc., 146 F. App'x 368, 371 (11th Cir. 2005). Describing the nature of a shotgun pleading, the United States Court of Appeals for the Eleventh Circuit has noted that "[t]he typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002). Shotgun pleadings also characteristically fail to specify which defendant is responsible for each

AO 72A
(Rev.8/82)

act alleged. <u>Beckwith</u>, 146 F. App'x at 372. With a shotgun pleading it is virtually impossible to know which allegations of fact are intended to support which claims for relief. <u>Beckwith</u>, 146 F. App'x at 372; <u>Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.</u>, 77 F.3d 364, 366 (11th Cir. 1996). As a result, the district court, faced with a crowded docket and "whose time is constrained by the press of other business, is unable to squeeze the case down to its essentials." <u>PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.</u>, 598 F.3d 802, 806 n.4 (11th Cir. 2010). Thus, shotgun pleadings impede the orderly, efficient, and economical disposition of disputes as well as the Court's overall ability to administer justice. <u>See</u> <u>Byrne v. Nezhat</u>, 261 F.3d 1075, 1128-31 (11th Cir. 2001) (abrogated on other grounds by <u>Douglas Asphalt Co. v. QORE, Inc.</u>, 657 F.3d 1146 (11th Cir.2011)); <u>Ebrahimi v. City of Huntsville Bd. of Educ.</u>, 114 F.3d 162, 165 (11th Cir. 1997).

Plaintiffs' Proposed Second Amended Complaint meets the definition of a shotgun pleading. Almost every count of the Proposed Second Amended Complaint incorporates all of the previous paragraphs of the Proposed Second Amended Complaint instead of referencing which specific facts support the cause of action within the count. Plaintiffs also refer to "Defendants" throughout the Proposed Second Amended Complaint without identifying the Defendant to whom they are referring when, in several of the Counts, and it does not appear to be reasonable that the violation could be found against both Defendants. Furthermore, the new causes of action are vaguely pled in legal conclusions, and it is unclear what facts within the Complaint are supposed to support

AO 72A
(Rev.8/82)

each claim.

The Eleventh Circuit has specifically instructed district courts to prohibit shotgun pleadings as fatally defective. B.L.E. ex rel. Jefferson v. Georgia, 335 F. App'x 962, 963 (11th Cir. 2009). To allow such a pleading would place an unjustifiable burden on the Court to take on the virtually impossible task of "ascertain[ing] what factual allegations correspond with each claim and which claim is directed at which defendant." Beckwith, 146 F. App'x at 373. The Eleventh Circuit, however, does not require the district court and the defendants, to "sift through the facts presented and decide for [themselves] which were material to the particular cause of action asserted." Strategic Income Fund, 305 F.3d at 1296 n.9. Because Plaintiffs' Proposed Second Amended Complaint is a shotgun pleading and is inadequately pled, it is futile. Degirmenci v. Sapphire-Fort Lauderdale, LLP, 693 F. Supp. 2d 1325, 1355-56 (S.D. Fla. Feb. 1, 2010) (denying amendment as futile because it was a shotgun pleading). Accordingly, leave to amend Plaintiffs' Complaint is **DENIED**. See Houman v. Lewis, No. 09-82271-CIV, 2010 WL 2331089, at *4 (S.D. Fla. June 10, 2010) (denying motion to amend complaint because it did not comply with Rule 8); Degirmenci, 693 F. Supp. 2d at 1355-56.

## CONCLUSION

For the foregoing reasons, the parties' motions are adjudicated as follows:

(1)     This Court **RECOMMENDS** that Bank of America, N.A. and the Bank of New York Mellon's Motion to Dismiss Plaintiffs' First Amended Complaint be **GRANTED IN PART AND DENIED IN PART**. Docket Entry [18].

41

(2)     Bank Defendants' Motion for Leave to File Sur-Reply is **DEEMED MOOT** because the Court has already adjudicated the Plaintiffs' Motion to Remand and Motion to Strike in Defendants' favor.  Docket Entry [19].

(3)     Plaintiffs' Joint Motion for Leave to Amend Complaint and Extension of Time to Amend Complaint is **DENIED**.  Docket Entry [32].

(4)      Defendants Bank of America and the Bank of New York Mellon's Motion for Leave to File Sur-Reply is **GRANTED**.  Docket Entry [37].

      **SO ORDERED AND REPORTED AND RECOMMENDED** this  2nd   day of August, 2012.


                     s/Linda T. Walker
                     LINDA T. WALKER
                     UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)